UNITED STATES of America,
Plaintiff–Appellee,

v.

John Thomas McCUSKER,
Defendant–Appellant.

No. 90–8512
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 12, 1991.

Mark Cohen, Austin, Tex. (Court-appointed), for defendant-appellant.

LeRoy M. Jahn, Philip Police, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JOLLY, SMITH and WIENER, Circuit Judges:

PER CURIAM:

Defendant–Appellant John Thomas McCusker, convicted of four counts of possession with intent to distribute Lysergic Acid Diethylamide (LSD) and one count of conspiracy with intent to distribute LSD, challenges (1) the district court's denial of his motion to dismiss the superseding indictment because it violated the Speedy Trial Act, 18 U.S.C. § 3161 et seq.; (2) the sufficiency of the evidence necessary to sustain the verdict when the LSD, weighed without the blotter paper on which it was carried, weighs less than the amount charged in each drug offense; (3) the inclusion, for sentencing purposes, of the weight of the blotter paper in calculating the weight of the LSD; (4) the completeness of the record on appeal; and (5) the district court's consideration during sentencing of McCusker's possession of a handgun, despite the jury's having acquitted him of a substantive count of using and carrying a firearm during a drug trafficking offense. Finding no reversible error, we affirm.

## I

## FACTS AND PROCEEDINGS BELOW

On October 11, 1989, federal officials arrested McCusker, also known as "Comic Book John," on the authority of a federal complaint charging him with the October 10, 1989, possession of LSD with intent to distribute.[1] On October 17th a grand jury returned a four-count indictment charging McCusker in count one with conspiracy to possess LSD with intent to distribute, in violation of 21 U.S.C. § 846, and in each of counts two, three, and four with possession of LSD with intent to distribute, respectively, on February 6, 1987, June 4, 1987, and October 18, 1987, all in violation of 21 U.S.C. § 841(a)(1).

On November 1, 1989, McCusker filed a motion for extension of time in which to file pretrial motions. The district court granted the motion on November 13th. On November 16th, McCusker filed several pretrial motions. The court conducted a hearing on these motions on December 11th, and ruled on the motions thirty days later, on January 10, 1990.

Meanwhile, on January 9, 1990, ninety days after McCusker's arrest, the grand jury returned an eight-count superseding indictment realleging the four original counts. Count five charged McCusker with possession of LSD with intent to distribute "[o]n or about October 11, 1989," in violation of 21 U.S.C. § 841(a)(1); and count six charged him with using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). Counts seven and eight charged McCusker's co-conspirator with drug offenses.

On January 29, 1990, McCusker filed a motion to dismiss the superseding indictment, arguing that it violated the Speedy Trial Act, 18 U.S.C. § 3161 et seq. The court denied the motion, and in April 1990, McCusker was tried. The government introduced evidence of taped conversations between McCusker and a person who was

1. Further detail on McCusker's activities can be gleaned from *United States v. Delario,* 912 F.2d 766 (5th Cir.1990).

cooperating with the government. A jury found McCusker guilty on the five drug counts, but acquitted him on the firearm count. On April 19, 1990, all the tapes introduced at trial were returned to the government. McCusker was sentenced on August 27, 1990. He timely filed notice of appeal.

## II

## DISCUSSION

### A. *Speedy Trial Act*

■ McCusker claims that the ninety-day delay between his arrest and the grand jury's filing of the superseding indictment violated his rights under the Speedy Trial Act (the Act), specifically section 3161(b) of Title 18 of the United States Code. Section 3161(b) requires "an indictment to be filed within thirty days from the date on which [an] individual was arrested...." For failure to file the indictment "within the time limit required by section 3161(b) as extended by section 3161(h)," section 3162(a)(1) mandates as a sanction dismissal of the charges contained in the indictment.

Section 3161(h) permits certain periods of delay to be excluded *"in computing the time within which an ... indictment must be filed, or in computing the time within which the trial of any such offense must commence."* (Emphasis added.) Those periods include "delay resulting from trial with respect to other charges against the defendant," 18 U.S.C. § 3161(h)(1)(D), and "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F).

In computing the seventy-day period from the filing date of the indictment within which a defendant's trial must commence, 18 U.S.C. § 3161(c)(1), this court has declared that periods of delay resulting from pretrial motions are "automatically excludable." *United States v. Gonzales,* 897 F.2d 1312, 1315 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 683, 112

L.Ed.2d 675 (1991) (citing *United States v. Horton,* 705 F.2d 1414, 1416 (5th Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983)). Moreover, we have stated that, when a superseding indictment retains some of the original charges, motions pending on the original charges also toll the running of the speedy-trial clock for new charges in the superseding indictment. *Id.* at 1316–17 (citing 18 U.S.C. §§ 3161(h)(1)(D) & (F)).

■ Because identical periods of delay are excludable in computing the period within which trial must commence and the period within which an indictment must be filed, 18 U.S.C. § 3161(h), the analysis applied to the tolling of the seventy-day trial clock also applies to the tolling of the thirty-day indictment clock. Consequently, just as delay resulting from pretrial motions directed to the original indictment tolls the seventy-day clock for commencing trial, so too does such delay toll the thirty-day clock for superseding indictments if the indictment retains some of the original charges. We find that, when the delay resulting from pretrial motions is excluded in computing the date by which McCusker's indictment had to have been filed, his indictment was timely filed.

On November 1st, twenty-one days after his arrest, McCusker filed his first pretrial motion. The period from that filing until November 13th, when the court granted the motion, is excludable from the thirty-day period. *See United States v. Kington,* 875 F.2d 1091, 1107 (5th Cir.1989) (when a proceeding, including a motion, stops speedy trial clock, all days between and including the commencement and termination of proceeding are excluded). The clock recommenced running on November 14th, and continued running on the 15th. But on November 16th, when McCusker filed a plethora of pretrial motions, the thirty-day clock again ceased to run. Moreover, that clock had not recommenced running by January 9, 1990, when the superseding indictment was filed, because the district court had not yet ruled on all the pretrial motions.[2] Only twenty-two days

---

**2.** Section 3161(h)(1)(J) allows the district court    a maximum of thirty days to rule on motions

(October 12th–31st, November 14–15) had passed before the superseding indictment was filed. Consequently, McCusker was reindicted within the thirty-day limit provided by the Act.[3]

## B. *Weight of the Blotter Paper*

McCusker argues that his convictions on each of the four counts that charged an intent to distribute "ten grams or more of a mixture or substance containing a detectable amount" of LSD must be set aside. McCusker contends that, because all of the pure LSD seized weighed less than ten grams, when the weight of the blotter paper—the medium used to carry the LSD—is excluded, the government failed to prove an element of each offense.

■ "This court has held that 'quantity is not an element of the crimes proscribed by §§ 841(a)(1) and 846 and need only be proved when the government seeks an enhanced penalty.'" *United States v. Delario*, 912 F.2d 766, 769 (5th Cir.1990) (quoting *United States v. Morgan*, 835 F.2d 79, 81 (5th Cir.1987)). Quantity is a sentencing concern.

■ The weight of the blotter paper is also pivotal in another of McCusker's arguments. McCusker contends that, in determining the weight of the drug to be used in calculating his sentence, the district court should not have included the weight of the blotter paper in the weight of the "mixture or substance containing a detectable amount" of LSD. The Supreme Court has recently held that "the weight of the blotter paper containing LSD, and not the weight of the pure LSD," determines the weight of the drug for sentencing purposes. *Chapman v. United States*, — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Consequently, we reject McCusker's argument.

## C. *Record on Appeal*

During trial the court admitted without objection three original microcassette recordings of conversations between McCusker and a person assisting the government in its investigation. These recordings were marked Government Exhibits 14A, 15A, 16A. The court also admitted, without objection, three standard-size cassette copies of these microcassettes. These tapes were marked Government Exhibits 14, 15, 16. The government played all or part of these copies for the jurors. It did not provide transcripts, and the court reporter did not transcribe the tapes as they were being played to the jurors.

The court also admitted into evidence a tape of a telephone conversation between two others involved with McCusker in the drug scheme. The record does not indicate that this tape was played to the jury. At the end of trial the district court ordered the tapes returned to the government which acknowledged their receipt.

For the record on appeal, the government submitted the three microcassettes marked Government Exhibits 14A, 15A, and 16A, each in a separate sealed but transparent evidence bag. The unbroken seal on each of the bags antedates the date of trial. On appeal the government also submitted the standard-size cassettes, each marked as "copy," and all in one bag labelled "evidence." The tapes are not marked with the exhibit numbers assigned to them at trial, and neither is the bag labelled "evidence" marked with exhibit numbers.

Because the court reporter did not transcribe into the written record the contents of the tapes played to the jury, McCusker argues that this court must reverse his conviction, unless we can affirmatively state that the omissions from the transcripts did not adversely affect his substantial rights.

once they are taken under advisement. *See United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991).

3. McCusker argues that his case is identical to *United States v. Gonzalez*, 748 F.2d 74 (2nd Cir.1984) in which the second circuit held that a six-month delay in filing an indictment violated § 3161(b). The second circuit did not, however, address the question of excludable delay.

The Court Reporter Act (the Act), 28 U.S.C. § 753(b), requires that a reporter "shall record verbatim by shorthand or by mechanical means ... all proceedings in criminal cases held in open court." As the requirements of Act are mandatory and compliance is not difficult, this court has insisted that "exceptions [to the requirements] should be few and narrowly construed." *United States v. Upshaw*, 448 F.2d 1218, 1223–24 (5th Cir.1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972). The court "must exclude the possibility of any error other than harmless error." *Id.* at 1224.

One narrow exception that renders harmless the failure to transcribe exists when both the defendant and the reviewing court can review for errors and defects those tapes played to the jury but not transcribed into the written record. *See United States v. Mendoza*, 574 F.2d 1373, 1379 (5th Cir.) (failure to transcribe tapes when played to jury "did not prejudice defendants and does not constitute reversible error"), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978). Other circuits agree. *United States v. Andiarena*, 823 F.2d 673, 676 (1st Cir.1987) (although failure to transcribe contents of tapes played to jury is technical violation of section 753(b), failure is harmless when reviewing court and defendant can listen to tapes played to jury); *United States v. Craig*, 573 F.2d 455, 480 (7th Cir.1977) (tapes are most accurate record of what jury heard), *cert. denied*, 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978); *United States v. Doyle*, 786 F.2d 1440, 1442 (9th Cir.), *cert. denied*, 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986).[4]

McCusker also challenges the authenticity of the tapes that the government has submitted on appeal; and counsel for McCusker, who did not represent him at trial, further contends that he cannot tell which tapes the government played to the jury. McCusker argues that he is, therefore, deprived of a record upon which to appeal. At trial, counsel for McCusker did not object to the introduction of the copy tapes. The authenticity of the copy tapes submitted at trial is not, therefore, in question. Neither is McCusker arguing that the tapes marked as copies in the record before us do not faithfully copy the microcassettes. Instead, McCusker merely asserts that he cannot tell whether the tapes marked copies are the tapes played at trial.

Neither McCusker nor his counsel has listened to either the microcassettes or the copies. Had either listened to the tapes, he could have determined whether the tapes differed; and if they did differ, then McCusker should have submitted that difference to the district court for resolution as Federal Rule of Appellate Procedure 10(e) requires.[5] Having heard the copies of the microcassettes at trial, that court is best situated to confirm the authenticity of the tapes.

As counsel has not pointed to a specific difference in the tapes, we cannot say that counsel is not engaging in dilatory tactics. Having listened to the tapes, we can say that they do not differ from each other. For that reason we reject McCusker's argument that he is entitled to a new trial so that he may have a record of the evidence forming the basis of the jury's verdict.

Even if both the original microcassettes and the accurate copies contained in the

---

**4.** McCusker also argues that when a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record mandates reversal, even absent any showing of specific prejudice or error. *See United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir.1977). Because we have found that none of the record is missing, this argument fails.

**5.** Rule 10(e) states:
If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and

settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

record somehow differ from a putative third series of tapes played to the jury, McCusker has waived the opportunity to object to the copies submitted on appeal because his trial counsel failed to object when the government played copies to the jury. We also note that McCusker has never alleged that the copies in the appellate record are not those played at trial; he merely alleges that, in the absence of a transcript contemporaneously recorded, no one knows with absolute certainty whether the tapes are those played at trial. But absolute certainty is not required, given the custody of the tapes and this court's determination that the copies are true and exact replicas of the originals.

D. *Consideration of the Firearm for Sentencing Purposes*

■ Finally, McCusker argues that the district court, in calculating his sentence, should not have assessed a two-point increase in offense level under the Sentencing Guidelines for possession of the firearm, because he was acquitted of that charge. This court has held that a district court does not abuse its discretion in determining the appropriateness of a sentence when it considers evidence of possession of a firearm even though the defendant has been acquitted of the substantive firearm offense. *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir.1989).

Affirmed.