UNITED STATES of America, Plaintiff,

v.

Jesse AILSWORTH, Jr., a/k/a "J.C.", Undra P. Mock, Kenneth R. Torain, Arnett Louise Rice, a/k/a Delores Perry, Terence J. Douglas, a/k/a "T", George T. Stewart, Jr., a/k/a "Pigg", and Calvin Lee Conway, Defendants.

No. 94–40017–01–07–SAC.

United States District Court, D. Kansas.

Nov. 18, 1994.

Joseph D. Johnson, Joseph D. Johnson, Chtd., Charles D. Dedmon, Office of Federal Public Defender, Topeka, KS, for defendant Jesse Ailsworth, Jr., aka "J.C."

F.G. Manzanares, Jerold E. Berger, Topeka, KS, for defendant Undra P. Mock.

James G. Chappas, Jr., Topeka, KS, for defendant Kenneth R. Torain.

Mark L. Bennett, Jr., Bennett & Dillon, Topeka, KS, Benjamin C. Wood, Lawrence, KS, for defendant Arnett Louise Rice aka Delores Perry aka Arnett L. Rice.

Matthew B. Works, Works, Works & Works, P.A., Amy C. Bixler, Alan G. Warner, Topeka, KS, for defendant Terence J. Douglas, aka "T" aka Terrance J. Douglas.

Stephen W. Kessler, Topeka, KS, for defendant George Stewart, Jr., aka "Pigg".

Jeannine D. Herron, William K. Rork, Rork Law Office, Topeka, KS, for defendant Calvin Lee Conway aka Calvin L. Conway.

Gregory G. Hough, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

On March 24, 1994, the grand jury returned a twenty count superseding sealed indictment charging certain violations of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine base), 21 U.S.C. § 841(a)(1) (possession with intent to distribute), 7 U.S.C. § 2024(b) (unlawful acquisition of food stamps), 18 U.S.C. § 924(c)(1) (use of a firearm during and in relation to a drug trafficking crime), and 26 U.S.C. § 5861(h) (receipt or possession of a firearm without serial number or other identification).

On August 24, 1994, this court entered a seventy-two page memorandum and order disposing of several pretrial motions filed by the defendants. *See United States v. Ailsworth,* 1994 WL 539347, 1994 U.S. Dist. LEXIS 14413 (D.Kan. Aug. 24, 1994). In that order, certain motions were taken under advisement to be decided on the eve of or during trial.

On October 3, 1994, trial was set to commence on October 31, 1994. On October 19, 1994, the grand jury returned a thirty-seven page second superseding indictment, adding twenty-five additional counts, for a total of forty-five counts. In addition to the crimes charged in the superseding indictment, the second superseding indictment charges violations of 21 U.S.C. § 843(b) (use of a communication facility to cause or facilitate a felony drug trafficking crime), 21 U.S.C. § 856 (control of a building for the purpose of storing a controlled substance), and 18 U.S.C. § 922(g) (felon in possession of a firearm). The second superseding indictment also charges another violation of 21 U.S.C. § 841 and another violation of 18 U.S.C. § 924(c)(1).

On October 27, 1994, this court entered a twenty-two page memorandum and order deciding certain motions and taking the balance of the motions under advisement. *See United States v. Ailsworth,* 867 F.Supp. 980 (D.Kan.1994).

This case comes before the court upon the following pretrial motions:

**Joint motions:**

1. Joint motion to dismiss 2nd superseding indictment on basis of vindictive prosecution (Dk. 332).

**Motion by Undra P. Mock (represented by Jerold Berger):**

1. Motion to join (Dk. 331).

**Motions by Kenneth R. Torain (represented by James G. Chappas):**

1. Motion to adopt previously filed pretrial motions (Dk. 334).

2. Motion to join (Dk. 335).

3. Supplemental motion to sever (Dk. 336).

4. Motion to quash and/or dismiss certain counts (Dk. 337).

**Motion by Arnett Louise Rice (represented by Benjamin C. Wood):**

1. Motion for continuance of trial date, for additional time to file motions and renewing previously filed motion for severance (Dk. 329).

**Motion by Terence J. Douglas (represented by Alan Warner and Amy Bixler):**

1. Motion to dismiss counts 2–24 of the second superseding indictment (Dk. 328).

**Motions filed by George Stewart, Jr. (represented by Stephen W. Kessler):**

1. Motion for bill of particulars (Dk. 322).

2. Supplemental motion for severance (Dk. 323).

3. Motion to strike surplusage from count 43 of the second superseding indictment (Dk. 324).

4. Motion to dismiss certain counts [2, 5, 8, 10, 13, 16, 17, 20, 21, 24, 25, 26, 29, 30, 31, 32, 33, 36, 39 & 43] from the second superseding indictment (Dk. 325).

5. Supplemental request for jury instructions (Dk. 327).[1]

**Motion by Calvin Lee Conway (represented by Jeannine D. Herron):**

1. Motion to renew previous motions (Dk. 333).

The government has filed a consolidated response (Dk. 339).

On November 10, 1994, the court conducted a hearing on these pretrial motions. Having considered the briefs and arguments of counsel, and the applicable law, the court is now prepared to rule.

**Motions to adopt previously filed pretrial motions (Dk. 334 and 333).**

In these motions, the defendants wish to adopt or renew the motion previously filed. These motions are granted. The court considers all pretrial motions previously filed to be renewed and adopted for purposes of the second superseding indictment.

**Motions to join (Dk. 331 and 335):**

The defendants' motions to join are granted under the same conditions set forth in the court's August 24, 1994, memorandum and order. Counsel are again directed to section I.C. of the court's procedural guidelines.

**Supplemental motions to sever (Dk. 336 and 323):**

The defendants' supplemental motions to sever are denied based upon the same authorities contained in the court's August 24, 1994, memorandum and order. Nothing presented in the defendants' supplemental motions demonstrates that the court's previous rulings regarding the defendants' requests for severance filed regarding the superseding indictment returned on March 24, 1994, are not equally applicable.

**Motion for continuance of trial date, for additional time to file motions and renewing previously filed motion for severance (Dk. 329) filed by Arnett Louise Rice:**

On November 2, 1994, this court entered an order granting Mark L. Bennett's motion to withdraw as appointed counsel. The court granted the motion based upon its consideration of the "facts and circumstances of this case, as well as the arguments and statements of counsel demonstrating the unique circumstances of his request."[2] On that same day, the court entered an order appointing Benjamin C. Wood to represent Rice in this case.

On November 4, 1994, Wood, on behalf of Rice, filed this motion which requested a continuance of trial date, additional time to file motions, and renews the previously filed motion for severance. In the memorandum in support of her motion, Rice recounts the efforts made by Wood since his entry of appearance. In short, based upon the volume and complexity of the task, Wood will

---

1. This motion is taken under advisement until the time of the jury instruction conference.

2. Bennett stated that based upon his commitments in other criminal cases, his continued representation in this case would deny Rice, as well as the other criminal defendants that he represented in other cases, the right to the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution.

not be able to adequately prepare for trial on November 28, 1994.

The government does not oppose Rice's motion for additional time to file additional motions. The government opposes Rice's motion for continuance of trial as well as her motion for severance. The government argues that if the court is inclined to grant Rice's motion for continuance, a continuance of trial as to all defendants is the appropriate course. The government contends that a continuance will not violate the defendants' respective rights to a speedy trial and that a continuance as to all defendants will save it the time and resources necessary to present the same evidence in two separate trials.

## Legal Standards

■ Under proper circumstances, the court may grant severance even if joinder under Fed.R.Crim.P. 8 is appropriate. *United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). Fed. R.Crim.P. 14 provides in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance or provide whatever other relief justice requires . . .

"In determining the merits of a motion for severance, the court must weigh the prejudice to a particular defendant caused by the joinder against the important considerations of economy and expedition in judicial interests." *United States v. Mabry*, 809 F.2d 671, 681 (10th Cir.), *cert. denied*, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987), *and overruled on other grounds, Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). Severance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case. *Hollis*, 971 F.2d at 1456. "The Supreme Court has emphasized that trial courts have 'a continuing duty at all stages of the trial to grant a severance if prejudice does appear.'" *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (quoting *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)).

## Speedy Trial Rights

■ 18 U.S.C. § 3161(h) provides in pertinent part:

> The following period of delay shall be excluded in computing the time within an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> . . . . .
>
> (7) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

In determining whether it is reasonable to apply delay of one co-defendant to other codefendants, the court must weigh all of the relevant circumstances. *United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990); *see United States v. Mobile Materials*, 871 F.2d 902, 911–912 (10th Cir.1989), *cert. denied, Philpot v. United States*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); *United States v. Theron*, 782 F.2d 1510 (10th Cir.1986) (subsection (h)(7) treats exclusion of time because codefendants are in the case, not (h)(8)).

■ Factors to be considered in determining whether delays are "reasonable" include:

(1) Whether the co-defendants are free on bond;

(2) The value of the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial. *See Mobile Materials, Inc.*, 871 F.2d at 916 (Where "the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred.");

(3) Whether the co-defendants seek a severance from the co-defendant who has caused the delay.

*See Mayes*, 917 F.2d 457, 460 (10th Cir.1990) (quoting *Tranakos*, 911 F.2d at 1426, *cert. denied*, 498 U.S. 1125, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991)).

### Analysis

■ Based upon its evaluation of all of the facts and circumstances of this case, the court grants Rice's motion for continuance of trial, extension of time to file pretrial motions and motion for severance. Based upon the volume and complexity of this case, it would be difficult or impossible for Rice's counsel to adequately prepare for trial. Although the government correctly notes that this severance will require it to basically present the same evidence in two separate trials, the court believes the unique circumstances of this case warrant Rice's severance from the other co-defendants. The court finds that the general preference for trying coconspirators in a single trial is outweighed by other, more compelling considerations. All but one of Rice's co-defendant's is incarcerated pending trial. Although the government correctly argues the additional time the codefendants would be required to stay in jail would not violate their constitutional or statutory rights to a speedy trial, the defendants are nevertheless incarcerated during that time. It is abundantly clear that none of Rice's codefendants desire to weather any further delays while incarcerated prior to commencing the trial of this matter.

In this multiple defendant case, the second superseding indictment contains forty-five counts. The trial of this matter its expected to take approximately one month. Consequently each time that the trial of this matter is rescheduled, counsel for each of the defendants must reschedule significant blocks of time in their respective calendars. Such changes obviously adversely affect or otherwise delay other civil and criminal cases in which those counsel appear. Although other courts have made substantial efforts to accommodate this court by rescheduling other matters, an additional continuance of this month-long trial involving so many attorneys will undoubtedly cause further delays and scheduling conflicts in those cases.

This court is also concerned that another continuance of this trial would adversely affect the rights of litigants in other cases. A continuance of this trial would likely impinge upon the rights of other defendants in other criminal cases. The rescheduling of this trial has also required this court to move several civil cases which had been set for several months.[3] This court, and the other courts in this district and the State of Kansas, have jockeyed their calendars for the last time due to the scheduling and rescheduling of this case.

Finally, although the court concludes that the delays in this case have not been caused by the bad faith actions of the government, the court does not believe that the government's failure to debrief its confidential informant earlier in the proceedings has demonstrated an abundance of foresight.[4]

In sum, while the court recognizes that granting Rice's severance will possibly require the government to present essentially the same evidence in two separate trials, the court concludes that the interests of justice are best served by severing Rice and proceeding to trial with the remaining defendants on November 28, 1994.

### Motion for a bill of particulars (Dk. 322):

> By the phrase "full discovery," [the defendant] presumably means that the government informed defense counsel that it would divulge case evidence within its control. If the government tells the defense it is conducting a case under principles of "full discovery," it undertakes a moral obligation to disclose relevant evidence within its knowledge so as not to lull defense counsel into not making a discovery motion. While the government may have been careless in this case, there is no indication that it acted in bad faith by failing to advise defense counsel of the statement.

8 F.3d at 1460–1461. This court finds no evidence of bad faith regarding discovery and accepts the government's repeated assurances that this is a "full discovery" case.

---

3. Obviously, the defendants' statutory and constitutional rights to a speedy trial trump civil litigant's rights to a jury trial. Nevertheless, this court is keenly aware that preparation for both criminal and civil trials requires a substantial investment of time and resources and has made every effort to avoid the waste of those resources in the management of its calendar.

4. Throughout this case, the government has repeatedly indicated that this is a "full discovery" case. In *United States v. Perdue*, 8 F.3d 1455 (10th Cir.1993), the defendant argued that the government violated a discovery order and did not abide by its statement that it was providing full discovery. The Tenth Circuit stated:

■ In regard to the violations of 21 U.S.C. § 843(b) charged in the second superseding indictment, the defendant requests the names and addresses of the parties to the communication, the identification of the party who initiated the contact, and the identification of the drug transaction to which the communication was related. The defendant also requests more specific information concerning the violations of 18 U.S.C. § 924(c)(1) charged in counts 34, 37 and 40. The defendant's request for a bill of particulars is denied based upon essentially the same authorities contained in the court's August 24, 1994, memorandum and order. In addition, the court directs the defendant's attention to *United States v. Barker*, 623 F.Supp. 823, 837 (D.Colo.1985) ("It is not necessary to allege the exact date and location of a telephone call in an indictment charging a violation of 21 U.S.C. § 843(b).") (citing *United States v. Rodriguez*, 546 F.2d 302 (9th Cir. 1976)).

**Motion to strike surplusage from count 43 (Dk. 324):**

■ Count 43 of the second superseding indictment charges Stewart with violating 18 U.S.C. § 922(g) and 924(a)(2). Specifically, Count 43 charges Stewart with knowing possession of a firearm by a convicted felon. Count 43 lists the specific felony crime of which he was convicted in state court, namely possession with intent to sell a narcotic drug. In this motion, Stewart requests the court to strike as surplusage the reference to the specific crime of which he was convicted. The defendant contends that the court should delete that reference and simply indicate to the jury that he has been convicted of a felony. Stewart contends that the inclusion of the specific crime is unnecessary, irrelevant and extremely prejudicial.

The government opposes Stewart's motion.

■ Under Fed.R.Crim.P. 7(d), "[t]he court on motion of the defendant may strike surplusage from the indictment or informa-

tion." "This rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Notes of Advisory Committee on Rules, 1944 Adoption, Note to Subdivision (d).

It is held that a motion to strike surplusage should be granted only if it is clear that the allegation are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard, and only rarely has surplusage been ordered stricken.

1 Charles A. Wright, *Federal Practice and Procedure* § 127 (1982); *see United States v. Scarpa*, 913 F.2d 993, 1013 (2nd Cir.1990) ("Motions to strike surplusage from an indictment will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'") (quoting *United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y. 1982) (citing authorities)). A motion to strike surplusage is committed to the discretion of the court. 1 *Federal Practice and Procedure* § 127.

■ The defendant has not directed the court's attention to any case law specifically supporting his request. In other cases in which a defendant has been charged with violating 18 U.S.C. § 922(g), this court has not stricken such references. As the government notes, proof that the defendant has been convicted of a felony is a necessary element of the government's case. *See United States v. Flower*, 29 F.3d 530, 534 (10th Cir.1994).[5] In the absence of persuasive authority, the court, in the exercise of its discretion, denies Stewart's request.

**Motion to quash and/or dismiss certain counts (Dk. 337):**

Torain seeks an order quashing and/or dismissing the counts in the second superseding indictment charging the defendants with use of a telecommunications facility to facilitate a controlled substances offense in violation of

---

**5.** "[T]he elements the government must prove in a § 922(g)(1) case [are] as follows:
(1) The defendant was convicted of a felony;
(2) Thereafter the defendant knowingly possessed a firearm; and

(3) The defendant's possession of the firearm was in or affecting commerce.
29 F.3d at 534 (citing *United States v. Shunk* 881 F.2d 917, 921 (10th Cir.1989)).

21 U.S.C. § 843(b).[6] Torain argues that 21 U.S.C. § 843(b) is unconstitutional as applied in this case as it violates the defendants' Fifth Amendment right prohibiting double jeopardy.[7] Torain argues that certain counts of second superseding indictment are multiplicitous. Torain also argues that certain counts are duplicitous.

The government responds, arguing that the defendant's motion should be denied. The government contends that the challenged counts are not multiplicitous or duplicitous. The government also argues that the defendant has failed to demonstrate that the challenged counts violates double jeopardy.

## Double Jeopardy

"The Fifth Amendment's guarantee against double jeopardy 'protects against multiple punishments for the same offense.' " *Mansfield v. Champion,* 992 F.2d 1098, 1100 (10th Cir.1993) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969)); *see United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) ("[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.").

■■■ "Where multiple counts for which a defendant is convicted cover the same criminal behavior, our review is limited to whether Congress intended multiple convictions and sentences under the statutes." *United States v. Morehead,* 959 F.2d 1489, 1506 (10th Cir.1992). "We first look to the language of the statutes and then to legislative history to discern Congressional intent re-garding multiple convictions and sentences. If Congressional intent cannot be discerned, we apply the well-settled "rule of statutory construction" set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), 'to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively.' " *Id.* (quoting *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980)). This test was articulated by the Supreme Court as follows:

> [W]here the same act or transaction constitutes a violation of the two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In short, the same criminal act may constitute separate offenses if each requires proof of some fact not required in proving the other.

## Multiplicity

■■■ " 'Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior.' " *United States v. Fleming,* 19 F.3d 1325, 1330 (10th Cir.1994) (quoting *United States v. Dashney,* 937 F.2d 532, 540 n. 7 (10th Cir.), *cert. denied,* 502 U.S. 951, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991)), *cert. denied,* —— U.S. ——, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994). Though not a fatal error for an indictment, multiplicity presents the danger of multiple sentences for one offense and the improper impression to the jury that the defendant committed more than one crime. *United States v. Jackson,* 850 F.Supp. 1481, 1497 (D.Kan.1994). The test

---

**6.** Title 21, section 843(b) provides:

 **Communication facility**

 (b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this title or title III. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

**7.** The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

for deciding whether someone may be prosecuted simultaneously for violations of two different statutes involving the same conduct is not the same as the standard for deciding whether someone can be convicted and punished under the two different statutes. *Ball v. United States,* 470 U.S. 856, 959–61, 105 S.Ct. 1668, 1670, 84 L.Ed.2d 740 (1985); *United States v. Parra,* 2 F.3d 1058, 1071 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993). As to the former standard, the issue is whether the statutory language and legislative history show the two statutes were intended to operate and to be applied independently. *Ball,* 470 U.S. at 860, 105 S.Ct. at 1671. As to the latter standard, the issue is whether Congress intended someone to be convicted and punished for two offenses for having committed the same conduct. *Ball,* 470 U.S. at 861, 105 S.Ct. at 1671–72.

## Duplicity

■ Duplicity occurs when two or more separate offenses are joined in the same count. *United States v. Hager,* 969 F.2d 883, 889 (10th Cir.) (citing *United States v. Haddock,* 956 F.2d 1534, 1546 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992)). The problem created is that a jury may convict a defendant without unanimously agreeing on the defendant's guilt of the same offense. *Id.*

> One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence, including its admissibility against one or more codefendants.

*United States v. Sasser,* 971 F.2d 470, 477, n. 5 (10th Cir.1992) (quoting *United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993).

## Analysis

■ Torain fails to demonstrate that the charges in the indictment violate double jeopardy, or are multiplicitous or duplicitous. As to his claim that the charges violate double jeopardy, it is clear that under the *Blockburger* test, this argument is without merit. "Conviction under § 843(b) requires proof that a defendant used a communications facility to facilitate the commission of a narcotics offense." *United States v. Martinez,* 950 F.2d 222, 224 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992). The other offenses with which the defendants are charged do not include the element that a telecommunications facility must be used for the commissions of those crimes. Therefore, not every violation of § 843(b) constitutes a violation of the other counts, and vice versa. *Cf., Id.*

During oral argument, Torain argued that because several of the § 843(b) charges are based upon the same underlying drug trafficking offenses, the imposition of multiple convictions for each of the § 843(b) violations would violate double jeopardy in the same way that multiple convictions under 18 U.S.C. § 924(c)(1) based upon the same underlying drug trafficking offense violates double jeopardy. The government responded, arguing that § 843(b) has not been construed in the same manner as 18 U.S.C. § 924(c)(1) has been construed by the Tenth Circuit, and that based upon the dissimilarity of the two statutes, it is doubtful that the Tenth Circuit would reach such a conclusion. In any event, the government argued that the court should not dismiss any of the § 843(b) counts at this time.

In *Parra,* the defendant, Sotelo, argued that the district court erred by entering judgment on two separate convictions for use of a firearm during a drug crime. Sotelo argued that it is a violation of the Double Jeopardy Clause to convict a defendant on two separate counts of violating 18 U.S.C. § 924(c)(1) when the defendant has used two separate weapons during a *single* drug offense. The Tenth Circuit agreed:

> In *United States v. Henning,* 906 F.2d 1392 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 112 L.Ed.2d 852, 111 S.Ct. 789

(1991), we held that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single violation of § 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for each firearm seized." *Id.* at 1399. In *United States v. Moore,* 958 F.2d 310 (10th Cir.1992), we modified the *Henning* rule and held that "there may be only one firearms *conviction* and sentence imposed for use of firearms during and in relation to an underlying 'crime of violence or drug trafficking crime,' under § 924(c)." *Id.* at 314 (emphasis in original). We reasoned that " 'the separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.' " *Id.* at 313 (quoting *Ball v. United States,* 470 U.S. 856, 865, 84 L.Ed.2d 740, 105 S.Ct. 1668 [1673] (1985) (emphasis in original)).

In this case, Count I of the indictment charged Sotelo with possession with intent to distribute less that 500 grams of cocaine. Count III charged him under § 924(c)(1) with use of the semi-automatic pistol during and in relation to the crime charged in Count I. Finally, Count V charged him with use of the .357 magnum revolver during and in relation to the crime charged in Count I. Although it was permissible to charge Sotelo separately under Counts III and V, *see Ball,* 470 U.S. at 865 [105 S.Ct. at 1673], and although there was sufficient evidence to support the jury's verdict as to each count, it was a violation of Sotelo's rights under the Double Jeopardy Clause to enter a judgment of conviction on both Counts III and V. We therefore remand to the district court with an order to vacate Sotelo's conviction and sentence on Count V.

*Parra,* 2 F.3d at 1070–1071.

The court, in its independent research of this issue, could find no cases directly supporting the defendant's argument that multiple convictions of § 843(b) based upon the commission of the same drug trafficking crime violates double jeopardy. Even if the defendant were ultimately able to convince this court that the Tenth Circuit would interpret § 843(b) similarly to the manner that it has interpreted 18 U.S.C. § 924(c)(1), it would not be appropriate for the court to dismiss any counts at this time. As the Tenth Circuit observed in *Parra,* it is permissible to charge the defendants with multiple violations; in the event that the defendants are convicted of multiple violations of § 843(b) that are based upon the commission of the same drug trafficking crime, the defendants may of course raise this double jeopardy issue prior to sentencing.

**Motion to dismiss counts 2–24 of the second superseding indictment (Dk. 328):**

Douglas moves to dismiss counts 2–24 of the second superseding indictment based upon his contention that there is no evidence to support a conviction on these counts. The government's brief acknowledges, but does not specifically respond to this precise argument.

▬▬▬ At this stage, an indictment is judged solely for the sufficiency of its charges without regard to the strengths and weaknesses of the government's case. *United States v. Quintanilla,* 760 F.Supp. 687, 690 (N.D.Ill.1991), *aff'd,* 2 F.3d 1469 (7th Cir.1993); *see United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 174–75, 9 L.Ed.2d 136 (1962). A court is not to look behind the indictment to see if it is supported by substantial evidence. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956). "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir.1994) (citing *United States v. Sampson,* 371 U.S. at 78–79, 83 S.Ct. at 174–75). An exception exists in this circuit when the operative facts are undisputed, an evidentiary hearing is conducted, and the government does not object to the trial court's consideration of evidence. *Hall,* 20 F.3d at 1087–88. The exception is inapplicable here, as the government apparently does not concede that there are insufficient facts to support these charges, nor has the government offered to participate in a pretrial evidentiary hearing.

Douglas' motion to dismiss counts 2–24 of the second superseding indictment is denied.

**Motions to dismiss second superseding indictment based upon prosecutorial vindictiveness or outrageous government conduct (Dk. 332 and 325):**

The defendants argue that the second superseding indictment (or at least the counts added by the second superseding indictment) should be dismissed for prosecutorial vindictiveness or outrageous governmental conduct. As to their prosecutorial vindictiveness claim, the defendants basically argue that the government has sought the second superseding indictment, which adds additional charges, as punishment for the defendants' failure to enter guilty pleas to the first superseding indictment. In regard to outrageous governmental conduct, the defendants argue that in at least eleven of the counts charging violations of 21 U.S.C. § 843(b), the telephone call or page was initiated by the government's agent or the government's informer. The defendants also argue that the counts in the second superseding indictment charging new crimes violates 18 U.S.C. § 3161(b) of the Speedy Trial Act in that the new crimes were not brought within thirty days of their arrest and should therefore be dismissed.

The government responds, indicating that it did not seek the additional charges based upon some vindictive or improper motive, but merely to conform to the charges to the evidence in its possession. The government contends that its actions in this case have been entirely proper.

### Outrageous Governmental Conduct

■ The concept of outrageous conduct was first recognized by dictum in *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973): "[W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Har-*

*ris,* 997 F.2d 812, 815 (10th Cir.1993). Most circuits, including the Tenth, recognize outrageous government conduct as a viable defense. *United States v. Mosley,* 965 F.2d 906, 909 (10th Cir.1992). The burden is with the defendant to prove this defense. *United States v. Pedraza,* 27 F.3d 1515, 1521 (10th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 347, 130 L.Ed.2d 303 (1994).

Neither the Supreme Court nor the Tenth Circuit have reversed a conviction on this defense with one possible exception. *United States v. Diggs,* 8 F.3d 1520, 1523 (10th Cir. 1993) (citing *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992) (reversed conviction when government did not dispute inducing the defendant and failed to adduce evidence supporting the jury's verdict that the defendant was predisposed)); *see United States v. Harris,* 997 F.2d at 816 (only two circuit court decisions and a handful of district court decisions have set aside convictions or dismissed charges because of outrageous government conduct). The outrageous government conduct defense "is an extraordinary defense reserved for only the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense." *United States v. Mosley,* 965 F.2d at 910; *see United States v. Clonts,* 966 F.2d 1366, 1369 (10th Cir.1992) (the defense "has been severely limited"), — U.S. —, 115 S.Ct. 270, 130 L.Ed.2d 188 (1994).[8]

■ To be so outrageous as to bar a prosecution, the government's conduct must offend "that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Russell,* 411 U.S. at 432, 93 S.Ct. at 1643. As opposed to the defense of entrapment that looks at the defendant's state of mind, the defense of outrageous conduct focuses on the government's actions

---

8. In setting such a difficult standard for this defense, courts have accounted for the danger of giving courts the power to "veto" law enforcement practices. *Russell,* 411 U.S. at 435, 93 S.Ct. at 1644. In *Mosley,* the Tenth Circuit recognized that law enforcement is afforded ample

discretion in devising methods to fight crime and that one accepted method is for government agents to assume the role of criminals in infiltrating criminal enterprises and apprehending criminals. 965 F.2d at 910.

with respect to the charged offense. *Diggs,* 8 F.3d at 1525. This defense is resolved only after an inquiry into the totality of the circumstances of the particular case. *Mosley,* 965 F.2d at 910. Though not exclusive, two factors commonly present when this defense has been successful are government creation of the crime and substantial coercion. 965 F.2d at 911.

### A. Creation of the Crime

 "Generally, the government may not manufacture a crime from whole cloth and then prosecute a defendant for becoming ensnared in the government's scheme." *Harris,* 997 F.2d at 816. The government is excessively involved when it "'engineer[s] and direct[s] the criminal enterprise from start to finish.'" *Pedraza,* 27 F.3d at 1521 (quoting *Mosley,* 965 F.2d at 911). On the other hand, it is not outrageous when the government infiltrates an ongoing criminal scheme, induces a defendant to expand prior criminal activity, or provides supplies or expertise for illegal activity. *Mosley,* 965 F.2d at 911–12.

### B. Coercion

 This factor looks at the government's means and efforts at influencing or inducing the defendant to commit the crime. Examples of sufficient affirmative coercion are physical force, incarceration, and large financial inducements. *Mosley,* 965 F.2d at 912. "[C]oercion of any type must be particularly egregious before it will sustain an outrageous conduct defense." *Id.* "'[G]overnment agents may employ appropriate artifice and deception in their investigation.'" *Mosley,* 965 F.2d at 912 (quoting *United States v. Biswell,* 700 F.2d 1310, 1314 (10th Cir.1983)); *see United States v. Pardue,* 983 F.2d 835, 841–42 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 728 (1993).

### Analysis

 Nothing argued by the defendants demonstrates that the government's conduct in this case rises to the level of "outrageous." Nothing argued by the defendants demonstrates that the government either engineered or directed the defendants' criminal enterprise. Nor have the defendants presented any evidence demonstrating that the government improperly coerced the defendants to commit the crimes charged. In short, having considered all of the facts and circumstances regarding the government's investigation of the crimes charged in the second superseding indictment, the court concludes that the defendants have not demonstrated that the government's conduct was outrageous.

### Prosecutorial Vindictiveness

In *United States v. Wall,* 37 F.3d 1443 (10th Cir.1994), the Tenth Circuit recently discussed the general principles surrounding the issue of prosecutorial vindictiveness:

In a claim of prosecutorial vindictiveness, the defendant bears the burden of proving either "(1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *United States v. Wood,* No. 93–2210 [36 F.3d 945, 946], 1994 U.S.App. LEXIS 26593, at *4 (10th Cir. Sept. 22, 1994) (quoting *United States v. Raymer,* 941 F.2d 1031, 1040 (10th Cir. 1991)); *see also United States v. Goodwin,* 457 U.S. 368, 374, 376, 380–81, 384 & n. 19, 73 L.Ed.2d 74, 102 S.Ct. 2485 [2489, 2492–93] (1982). If the defendant successfully bears that burden, the prosecution must "justify its decision with legitimate, articulable, objective reasons" for its actions. *Raymer,* 941 F.2d at 1040.

* * * * *

"When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution." *Id.* at 1040; *see also Goodwin,* 457 U.S. at 372 [2488]; *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 54 L.Ed.2d 604, 98 S.Ct. 663 [668] (1978). A prosecutorial decision is not vindictive if it is "'based upon the normal factors ordinarily considered in determining what course to pursue.'" *Raymer,* 941 F.2d at 1042 (quoting *United States v. DeMichael,*

692 F.2d 1059, 1062 (7th Cir.) *cert. denied,* 461 U.S. 907 [103 S.Ct. 1878, 76 L.Ed.2d 809] (1983); *see also United States v. P.H.E., Inc.,* 965 F.2d 848, 860 (10th Cir. 1992). The test is "whether, 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right.'" *Raymer,* 941 F.2d at 1042 (quoting *United States v. Gallegos–Curiel,* 681 F.2d 1164, 1169 (9th Cir.1982)).

. . . . .

As the district court and our prior cases acknowledge, there is a distinction between claims of prosecutorial vindictiveness occurring pre-trial and post-trial. Thus, "there is a presumption of vindictiveness when a defendant successfully attacks his first conviction and then receives a harsher sentence on retrial, or when 'the "prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing"' by charging a successful appellant with a felony covering the same facts." *United States v. Miller,* 948 F.2d 631, 633 (10th Cir.1991) (quoting *Alabama v. Smith,* 490 U.S. 794, 800 n. 3, 104 L.Ed.2d 865, 109 S.Ct. 2201 [2205] (1989) (quoting *Blackledge v. Perry,* 417 U.S. 21, 27, 40 L.Ed.2d 628, 94 S.Ct. 2098 [2102] (1974))), *cert. denied,* [503 U.S. 912] 112 S.Ct. 1278 [117 L.Ed.2d 504] (1992).

By contrast, in the pre-trial setting, "the Supreme Court generally has refused to create such presumptions." *Id.*

. . . . .

The presumption of vindictiveness arises when there is a "realistic likelihood" of vindictiveness in retaliation for the exercise of a legal right. *Raymer,* 941 F.2d at 1039. Here, Wall identifies no right with respect to which the government retaliated. *Cf. Wood,* [36 F.3d at 946–947] 1994 U.S.App. LEXIS 26593 at *5 (affirming the finding of a reasonable likelihood of vindictiveness where decision to reindict was "made soon after Defendant exercised a legal right to the government's disadvantage."). He sought and received partial severance of the charges against him, yet

that tactical decision cannot then permit a charge of vindictiveness when the government files superseding indictments in the severed trials. "A claim of vindictive prosecution cannot insulate the defendant from the lawful consequences of his tactical choices." *Raymer,* 941 F.2d at 1042.

Further, [the defendant] cannot expect that the government will not learn from the earlier trial, in which he was acquitted. Even if the government gleaned information about the Miles/Rothhammer transactions in that earlier trial, pursuant to the district court's evidentiary ruling, there is no reason why the government should be compelled to disregard that knowledge in its subsequent prosecution. And the acquittal itself cannot form the basis for a charge of prosecutorial vindictiveness.

*Id.* at 1447–1449, 1994 U.S.App. LEXIS 26593 at *13–19.

In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court considered the issue of whether the Due Process Clause of the Fourteenth Amendment is violated when a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged. The Supreme Court, in a 5–4 decision, held that it did not. In part, the Supreme Court stated:

To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, *see North Carolina v. Pearce, supra,* [395 U.S.] at 738 [89 S.Ct. at 2082] (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." *Chaffin v. Stynchcombe, supra* [412 U.S. 17], at 32–33, n. 20 [93 S.Ct. 1977, at 1986, n. 20, 36 L.Ed.2d 714 (1973)]. *See United States v. Jackson,* 390 U.S. 570 [88 S.Ct. 1209, 20 L.Ed.2d 138]. But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. *Brady v. United States, supra* [397 U.S. 742] at 752 [90 S.Ct. 1463, at 1471, 25 L.Ed.2d 747 (1970)]. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. 397 U.S., at 758 [90 S.Ct. at 1474]. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. (citations omitted).

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe, supra* [412 U.S.] at 31 [93 S.Ct. at 1985]. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

It is not disputed here that [the defendant] was properly chargeable under the recidivist statute, since he had in fact been convicted of two previous felonies. In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456 [82 S.Ct. 501, 506, 7 L.Ed.2d 446]. To hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged. *See Blackledge v. Allison,* 431 U.S., [63] at 76, 97 S.Ct. [,1621] at 1630 [52 L.Ed.2d 136 (1977)].

434 U.S. at 363–365, 98 S.Ct. at 667–69 (footnote omitted). *See United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (no presumption of prosecutorial vindictiveness where defendant is charged with a felony after refusing to plead guilty to misdemeanor charges and also requests a jury trial).

 The court concludes that there is no presumption of vindictiveness in this case and that there is little or no evidence to support a finding of prosecutorial vindictiveness. In reaching this decision, the court has carefully considered the totality of the circumstances in light of the controlling law.

### Speedy Trial

 18 U.S.C. § 3161(b) provides in pertinent part:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

The defendants' speedy trial rights have not been violated. "As a general rule, the filing of a superseding indictment does not affect the speedy trial timetable for offenses either charged in the original indictment or re-

quired under double jeopardy principles to be joined with such charges." *United States v. Marshall,* 935 F.2d 1298 (D.C.Cir.1991). *See United States v. Orbino,* 981 F.2d 1035, 1037 (9th Cir.1992) ("A superseding indictment issued before the original indictment is dismissed may issue more than thirty days after arrest."), *cert. denied,* —— U.S. ——, 114 S.Ct. 256, 126 L.Ed.2d 208 (1993); *United States v. McCown,* 711 F.2d 1441, 1445 (9th Cir.1983); *United States v. Wilks,* 629 F.2d 669, 673 (10th Cir.1980); *Pless v. United States,* No. 85–10057–01, 1990 WL 66019, 1990 U.S.Dist. LEXIS 5767 (D.Kan. March 28, 1990) ("There is no requirement that a superseding indictment be filed within the time period prescribed under § 3161(b) for the original indictment.") (citing *Wilks* ); *see also United States v. McCusker,* 936 F.2d 781, 784, n. 3 (5th Cir.1991) (distinguishing *United States v. Gonzalez,* 748 F.2d 74 (2nd Cir.1984)).[9]

IT IS THEREFORE ORDERED that the motions to adopt previously filed motions join (Dk. 334 and 333) are granted.

IT IS FURTHER THEREFORE ORDERED that the motions to join (Dk. 331 and 335) are granted under the conditions set forth in the body of this opinion.

IT IS FURTHER THEREFORE ORDERED that the supplemental motions to sever (Dk. 336 and 323) are denied.

IT IS FURTHER THEREFORE ORDERED that Rice's motion for additional time to file motions, request for severance, and continuance of trial (Dk. 329) is granted.

The court finds that based upon the facts set forth in the body of this opinion that the additional time for filing pretrial motions and for the continuance of trial are necessary for the defendant to adequately prepare her defense.

The court further finds that the period of delay resulting from the continuance granted pursuant to this memorandum and order shall be excludable time as provided for in 18 U.S.C. § 3161(h)(8) and that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial.

IT IS FURTHER ORDERED that the motion for a bill of particulars (Dk. 322) is denied.

IT IS FURTHER ORDERED that the motion to strike surplusage (Dk. 324) is denied.

IT IS FURTHER ORDERED that the motion to quash and/or dismiss certain counts (Dk. 337) is denied.

IT IS FURTHER ORDERED that the motion to dismiss counts 2–24 of the second superseding indictment (Dk. 328) is denied.

IT IS FURTHER ORDERED that the motions to dismiss the second superseding indictment based upon prosecutorial vindictiveness or outrageous government conduct (Dk. 332 and 325) are denied.

IT IS FURTHER ORDERED that the supplemental request for jury instructions (Dk. 327) is taken under advisement.

**9.** In *McCusker,* the defendant argued that his case was identical to *Gonzalez.* In *Gonzalez,* the second circuit held that a six-month delay in filing an indictment violated § 3161(b). The defendants in the case at bar, like the defendant in *McCusker,* cite *Gonzalez* as supportive of their position. In *McCusker,* the Fifth Circuit distinguished *Gonzalez,* noting that the Second Circuit did not address the question of excludable delay under 18 U.S.C. § 3161(h).

In the case at bar, taking into account the time excludable under the Speedy Trial Act, at most, twenty-one days had passed at the time the second superseding indictment was filed.