**Milton Larry JENKINS, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

No. 84–3471.

United States Court of Appeals, Eleventh Circuit.

June 25, 1985.

Howard W. Skinner, Federal Public Defender, Jacksonville, Fla., for petitioner-appellant.

Gary Lee Printy, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before VANCE and ANDERSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

VANCE, Circuit Judge:

Petitioner Milton Larry Jenkins was convicted of third degree murder in a Florida state court in 1979. His case is before this court on appeal from the district court's denial of the writ of habeas corpus. We affirm the district court's judgment because we conclude that Jenkins has presented no meritorious claim.

* Honorable J. Smith Henley, U.S. Circuit Judge

In December 1978 an employee of the Big Star grocery in Jacksonville, Florida, was killed during a robbery. The crime was committed by a lone gunman wearing a ski mask and dark clothing. In March 1979, Jenkins and his stepsons Tony and Richard Schiver, aged 18 and 16 respectively, were arrested in connection with the crime. Shirley Hudson, a girlfriend of both Jenkins and the Schivers, cooperated with the police and furnished much of the information police used to make the arrests.

Both Jenkins and Richard Schiver were charged with first degree murder. Richard's trial was scheduled one week after Jenkins' trial. Tony Schiver testified at Jenkins' trial under grant of immunity. Richard Schiver and Shirley Hudson also testified for the state at Jenkins' trial, but both stated that they had made no deals with the prosecutor. Shirley was never charged with any crime, and Richard later pled guilty to a reduced charge of third degree murder. He received two years' probation as a youthful offender, adjudication of guilt withheld.

Jenkins was convicted of third degree murder and sentenced to 30 years in prison. After exhausting his state remedies, he filed a habeas corpus petition in the district court. On June 11, 1984, the court adopted the magistrate's findings and denied the habeas petition. Jenkins appealed to this court, and the district court granted Jenkins' request for a certificate of probable cause.

Jenkins raises three issues on appeal. First, he claims that the trial court impermissibly restricted cross-examination of Richard Schiver and Shirley Hudson on their reasons for cooperating with the state. Second, he contends that the Schiver brothers' testimony was inadmissible as the unattenuated by-product of police misconduct at the time of their arrests. Last, he contends that the exclusion of death penalty opponents from his jury at the guilt phase of the trial violated his right to a fair, impartial and representative jury. We will address each contention briefly.

for the Eighth Circuit, sitting by designation.

According to Jenkins, the trial court abridged his sixth amendment right of confrontation by limiting the cross-examinations of Richard Schiver and Shirley Hudson. Both witnesses were represented by counsel who were present during their testimony at Jenkins' trial. Jenkins' attorney wished to elicit from both witnesses any and all information they had received from either the prosecutor or their lawyers concerning the possibility of deals or leniency. After conferring with all the lawyers and both witnesses outside the jury's presence, the judge ruled that the defense could ask about any deals, promises or indications of leniency given to the witnesses by the state, but prohibited questions on the specific advice given to them by counsel because those communications were protected by the attorney-client privilege. Jenkins argues that questions concerning advice received by the witnesses were crucial in establishing bias. The attorneys, he argues, could have received hints or offers from the state which they passed along to the witnesses, or they could have told their clients what indications they had about the state's willingness to reward them for testifying.

██ The Supreme Court has repeatedly acknowledged that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974) (citation and footnote omitted). This court has long recognized the particular importance of searching cross-examination of witnesses who have substantial incentive to cooperate with the prosecution. *See, e.g., United States v. Alonso*, 740 F.2d 862, 874–75 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985); *United States v. Kopituk,* 690 F.2d 1289, 1336–37 (11th Cir.1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983); *United States v. Elliott,* 571 F.2d 880, 908–11 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *United States v. Onori,* 535 F.2d 938, 945–46 (5th Cir.1976); *Grant v. Unit-*

*ed States,* 368 F.2d 658, 660–61 (5th Cir. 1966). We do not believe that the defense was hampered by the trial court's ruling in this case. The court must permit cross-examination sufficiently thorough to satisfy the sixth amendment, but once that threshold is passed, limitations on questioning are within the sound discretion of the trial court. *Greene v. Wainwright,* 634 F.2d 272, 275 (5th Cir.1981). Although it is difficult to state precisely the proper scope of cross-examination, we follow the common-sense principle suggested by the Supreme Court:

> [T]o make any such inquiry [into reasons for bias] effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.

*Davis v. Alaska,* 415 U.S. at 318, 94 S.Ct. at 1111 (quoted in *United States v. Elliott,* 571 F.2d 880, 909 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978)).

██ In this case the trial judge permitted Jenkins' attorney to "inquire as to every reason [the witness] knows of and thinks why [the witness] should testify now." The judge prohibited only questions about privileged communications between the witnesses and their lawyers. A review of the trial transcript reveals that defense counsel conducted an extensive and pointed interrogation of both Richard Schiver and Shirley Hudson. Both admitted on the stand that, although the police and the prosecutor had not made them any specific promises, they believed their testimony would help them later and that their lawyers had told them it would be to their advantage to cooperate. The jury was informed of the first degree murder charge pending against Richard Schiver and Shirley Hudson gave considerable testimony on her prior drug use. In sum, the cross-examination was more than adequate to expose the witnesses' bias and self-interest. The abrogation of the attorney-client privilege was unnecessary to present a com-

plete picture to the jury. The trial judge's limitation did not offend the sixth amendment, nor did it constitute an abuse of discretion.

 Jenkins also argues that the court erred in admitting the Schiver brothers' testimony. His claim is premised on the contention that when the brothers were arrested police coercion and harassment induced them to tell the police anything, including lies.[1] According to Jenkins, their trial testimony was too closely linked to the coercive interrogation at the police station to be reliable and hence was inadmissible. Jenkins does not argue that this contention should be viewed as a straightforward application of the prophylactic exclusionary rule. The question is whether, given the circumstances, the testimony was too unreliable to pass the threshold requirement for admissibility. The trial judge concluded at the suppression hearing that Jenkins' attack went to the credibility of the witnesses, not the admissibility of their testimony and permitted both brothers to testify subject to cross-examination. Such evidentiary issues are within the discretion of the trial judge, and we cannot fault him for admitting testimony given over three months after the tainted interrogation. *Cf. Oregon v. Elstad,* — U.S. —, —, 105 S.Ct. 1285, 1294–95, 84 L.Ed.2d 222 (1985) (length of time between coerced confession and later voluntary statement a significant factor in determining whether coercive effects had dissipated). The witnesses were rigorously cross-examined. The jury was apprised of the brothers' treatment when they were arrested and of the kinds of statements they made at the time. It was properly within the province of the jury as fact finder to weigh the credibility of the testimony.

 Jenkins also argues that the exclusion of jurors opposing the death penalty from the trial on the merits denied him a trial by a fair cross-section of the community and created a guilt-prone jury. As he concedes, this claim has already been rejected by this court, and we abide by the controlling precedent. *See Smith v. Balkcom,* 660 F.2d 573, 575–84 (5th Cir. Unit B 1981), *modified* 671 F.2d 858 (5th Cir. Unit B), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982); *Spinkellink v. Wainwright,* 578 F.2d 582, 591–99 (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

AFFIRMED.

---

1. The record establishes without dispute that Tony and Richard were mistreated by the police. Tony was never advised of the charges against him, and his requests for an attorney were rebuffed. The police told him his little brother was charged with first degree murder and would be electrocuted unless he told them about the murder. Richard was placed alone in a room at the jail and given no food for 12 hours. He was denied any chance to see an attorney or his mother, despite repeated requests. The police showed him his picture on the front page of the paper the next morning and told him he was arrested for first degree murder and armed robbery. They told him he would face the electric chair unless he cooperated. If he talked to them, they said, he could get out of jail in four days. Tony was brought in to encourage Richard to talk, and both boys ultimately told the police what they wanted to know, implicating Jenkins in the shooting. Both boys later testified that some of their statements to the police were not true, and that they were not concerned with the truth at the time.