[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12985
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-20762-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IVAN ALMAGRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 19, 2010)

Before EDMONDSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

In the early morning hours of August 11, 2005, U.S. Customs and Border

Protection ("CBP") intercepted Ivan Almagro's boat off the coast of Miami and discovered five illegal aliens aboard. A jury subsequently convicted him on five counts of encouraging or inducing aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv).

Almagro contends that the evidence was insufficient to support his convictions and that the district court improperly limited the cross-examination of the only alien out of the five who testified live against him at trial. He further contends that depositions of two other aliens were not transcribed when played in open court, in violation of the Court Reporter Act, 28 U.S.C. § 753(b), and should not have been submitted to the jury for viewing during its deliberations. After thorough review, we affirm his conviction as to each count.

## I.

"We review challenges to sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in the government's favor." United States v. Brown, 598 F.3d 772, 775 (11th Cir. 2010). In undertaking our evaluation, we are "limited to determining whether a reasonable jury could have found the defendant[] guilty on the basis of the evidence presented." United States v. Jordan, 582 F.3d 1239, 1247 (11th Cir. 2009). We are also mindful that a reasonable jury

2

may disregard a defendant's incredible testimony and consider it as substantive evidence of his guilt. United States v. Williamson, 339 F.3d 1295, 1301 n.14 (11th Cir. 2003) (collecting cases).

## A.

To establish a criminal violation of 8 U.S.C. § 1324(a)(1)(A)(iv), the government must prove beyond a reasonable doubt that the defendant (1) encouraged or induced (2) an alien (3) to come to, enter, or reside in the United States, (4) in knowing or reckless disregard that such coming to, entry, or residence is or will be illegal. Almagro argues that the evidence was insufficient on all elements but the second. Specifically, he contends that those elements were not met because language barriers prevented any substantive communication aboard the boat between him and the aliens whose testimony was admitted at trial. Almagro thus characterizes himself as merely the boat's captain who at most provided the aliens with "silent, simple transporting 'help.'" Appellant's Br. 13.

This Court has interpreted the phrase "encouraged or induced" in § 1324(a)(1)(A)(iv) broadly, "construing it to include the act of 'helping.'" Edwards v. Prime, Inc., 602 F.3d 1276, 1295 (11th Cir. 2010). In United States v. Lopez, 590 F.3d 1238 (11th Cir. 2009), we held that the evidence was "more than adequate" to support the conviction of a boat captain under § 1324(a)(1)(A)(iv)

3

where he knowingly participated in a smuggling operation in which he had to pilot a boat from the United States "to the Bahamas, refuel it, spend the night, pick up the aliens from an abandoned hotel, and then . . . come back to the United States" with the aliens aboard. Lopez, 590 F.3d at 1252 (emphasis omitted). Similarly, in United States v. Hanna, 639 F.2d 192, 193 (5th Cir. 1980),[1] we declined to overturn a conviction of a boat captain when he was employed to transport 148 Haitians to the United States; assisted the aliens in boarding the boat; embarked on a mini expedition during the twelve-day voyage to secure food and water for the aliens; and concocted an alibi for the aliens to give to police if they were apprehended.[2] Our holdings in those cases in no way depended on the presence of either verbal or nonverbal communications between the defendant and the smuggled aliens. Knowing acts of assistance in a smuggling operation sufficed.

Even putting aside the evidence that Almagro says was improperly admitted, we conclude that a reasonable jury could find Almagro guilty beyond a reasonable doubt. The unchallenged evidence on appeal shows that in an effort to enter the United States illegally the aliens aboard Almagro's boat utilized a "coyote" to

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[2] The defendant in Hanna was convicted under a prior version of 8 U.S.C. § 1324 that like the current version criminalized encouraging or inducing illegal aliens to enter the United States. See Lopez, 590 F.3d at 1251–52 & n.13 (discussing Hanna and noting the similarity between 8 U.S.C. § 1324(a)(4) (1976 & Supp. IV 1981) and § 1324(a)(1)(A)(iv)).

smuggle them.  To complete the last leg of their circuitous and at times covert journey to the United States, the coyote brought them to Almagro's boat moored in a Nassau, Bahamas marina.  With Almagro at the helm, they set off for Miami and arrived off the coast under the cover of darkness at 1:00 a.m. and with the lights off.  This alerted CBP officials patrolling in Biscayne Bay who then intercepted the boat and determined that the five aliens aboard did not have any documentation evidencing legal status in the United States.

In contrast to this evidence presented by the government, Almagro presented a story replete with excuses.  For example, he said he had made various attempts to deliver the aliens to the authorities as he approached Miami.  The government rebutted this story with persuasive exhibits and accompanying testimony at every turn.  During his testimony at trial, Almagro explained that while he was vacationing in Nassau he had to embark unexpectedly for Miami to address some urgent business matters.  Two-and-a-half hours into his trip, he had to "save the[ ] lives" of the five aliens who were stranded on an a small island and vigorously signaling for his help.  Rather than complete the rescue by way of the shorter two-and-a-half-hour return trip to Nassau, Almagro decided to motor on to Miami, which remained five to six hours away.  This despite the older woman who was among his passengers, and feeling faint.  He made that decision, he says, because

he could not make it back to Nassau and then to Miami without having to refuel in Nassau at relatively expensive prices.

The jury was thus free to disbelieve Almagro's fishy tale[3] and use it as substantive evidence of his guilt.  The jury was also free to credit the government's evidence, which sufficiently linked Almagro to a smuggling operation and showed that he not only secured the aliens' passage to the United States but also attempted to conceal their entry upon arrival.  The record was thus awash with evidence to support his convictions.

B.

With respect to Count 1, Almagro urges that he was not properly convicted because the government never proved that José Adolfo Jesurun-Rosario, the alien named in Count 1, was the José found aboard his boat.  Although the evidence is ambiguous as to the identity of the passenger named José given that more than one José was involved in the smuggling operation, nothing in 8 U.S.C. § 1324(a)(1)(A)(iv) requires the government to prove the smuggled aliens' identities.  See United States v. Gari, 572 F.3d 1352, 1364 n.9 (11th Cir. 2009); see also United States v. Powell, 498 F.2d 890, 892 (9th Cir. 1974) ("[T]he names add

---

[3]The district judge found Almagro's story incredible.  At sentencing, she increased Almagro's base offense level by two levels for obstruction of justice.  See U.S.S.G. § 3C1.1 (Nov. 2008).

nothing to the proof of the elements of the crime. The mention of the names in the indictment was surplusage not requiring proof.").[4] What is required is proof of their status as illegal aliens. The government proved status for all counts through a CBP officer, who provided uncontroverted testimony that he found five passengers aboard Almagro's boat, none of whom had documentation evidencing either permanent or temporary legal status in the United States.

## II.

Almagro next argues that the district court improperly limited his cross-examination into the motive of the government's "star" witness, the one alien who testified in person against him at trial.

Although a district court has broad discretion under Federal Rule of Evidence 611(b) in limiting the permissible scope of cross-examination, the court cannot infringe on a criminal defendant's Sixth Amendment right to be "confronted with the witnesses against him." See United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009). Implicit in that right is the right to effective cross-examination. See Chambers v. Mississippi, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046 (1973). Such a cross-examination includes the right to conduct a searching inquiry into the motives of witnesses who have a "substantial incentive

---

[4]The defendant in Powell was convicted under a prior version of 8 U.S.C. § 1324. See supra note 2.

to cooperate with the prosecution." Jenkins v. Wainwright, 763 F.2d 1390, 1392 (11th Cir. 1985). Oftentimes it is only through such a cross-examination that a criminal defendant will be able to ferret out a witness' motivations for testifying against him and to persuade the jury on the appropriate weight, if any, to accord that witness' testimony. United States v. Lankford, 955 F.2d 1545, 1548 (11th Cir. 1992). The need for a searching cross-examination is all the more important when a "star" witness is on the stand. United States v. Phelps, 733 F.2d 1464, 1472 (11th Cir. 1984).

With a criminal defendant's Sixth Amendment rights in mind, we review a district court's limitation of cross-examination for abuse of discretion. Maxwell, 579 F.3d at 1295. We will find error only if "a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994).

On cross-examination, Almagro sought to undermine the credibility of Jordana Correia by establishing that her pending asylum application provided her with a motive for giving favorable testimony for the government. The district court allowed questioning about whether Correia sought to please the government and whether she understood that the government would initially decide the fate of

8

her application. The district court, however, did not allow cross-examination about the underlying facts of her application in order to cast doubt on her claimed persecution, and for the purpose of emphasizing the extent of her need for the government's help.

Almagro argues that the district court's limitation, on the grounds of relevance and that the proposed line of questioning sought a legal conclusion, was error because it prevented him from establishing the extent of Correia's motive to color or falsify her testimony. We disagree. Whether Correia sought asylum on account of religious, gender, or other persecution sheds no light on her motive to testify favorably for the government. Also, Correia was in no position to offer testimony regarding the merits of her asylum application as it might be viewed by immigration officials. See Fed. R. Evid. 701.

We recognize that a line of questioning into Correia's *personal* belief regarding the strength or truthfulness of her petition might be relevant in proving the force behind her motive. See Fed. R. Evid. 401. To that extent that this line of questioning was foreclosed by the district court's ruling, we believe it would have provided little additional probative value beyond the permitted questioning. Neither was the line of questioning necessary to satisfy the requirements of the Sixth Amendment. We also observe that any possible harm to Almagro was

diminished when his counsel argued in closing that because of Correia's pending asylum application the jury should discount her testimony as biased and improperly motivated. We thus find no abuse of discretion by the district court in this ruling.

## III.

Almagro's final claims of error deal with the videotaped depositions of two other aliens aboard his boat.[5] The videotapes were played to the jury. He argues that the two videotaped depositions were not transcribed by the court reporter in violation of the Court Reporter Act, 28 U.S.C. § 753(b). He further complains that the judge should not have sent the videotaped depositions into the jury room, much less with a computer on which the jury could play them selectively and at will. We address each argument in turn.

## A.

---

[5]Almagro's brief also mentions a third deposition (of Almeida) but does not make an intelligible challenge with respect to it. That deposition was not presented by video, but was read to the jury and reported by the court reporter. Almagro's challenge to depositions allowed into the jury room focuses only on the two videotaped depositions.

In addition, the supplemental record on appeal reveals that the unadmitted videotaped deposition of Jordana Correia was likely sent to the jury room inadvertently, as it was contained on one of the DVDs sent to the jury. That submission, although inadvertent, constitutes error. But Almagro has not raised this issue on appeal, and the district court asked trial counsel to review the exhibits for any problems before sending them to the jury. In any event, we find the deposition largely cumulative of Correia's testimony at trial. More to the point, we believe the error did little, if anything, to bolster the credibility of Correia's story over Almagro's given the incredible story he told. See Martin v. Estelle, 541 F.2d 1147, 1148 (5th Cir. 1976); see also United States v. Guida, 792 F.2d 1087, 1091–94 (11th Cir. 1986).

The court reporter did not record the two videotaped depositions played to the jury. Almagro contends that this violated the Court Reporter Act, 28 U.S.C. § 753(b), and urges that because he has new counsel on appeal, a new trial is necessary to remedy the resulting "substantial and significant omission from the trial transcript," United States v. Charles, 313 F.3d 1278, 1283 (11th Cir. 2002).

The Court Reporter Act requires that a reporter shall "record[] verbatim by shorthand, mechanical means, electronic sound recording, or any other method . . . all proceedings in criminal cases had in open court." 28 U.S.C. § 753(b). The requirements of the Court Reporter Act are "mandatory, not permissive." Calhoun v. United States, 384 F.2d 180, 183 (5th Cir. 1967). This ensures that a criminal defendant has an complete record on which to challenge his conviction on appeal.

Even if we accept Almagro's argument that the decision to not "take down" videotaped depositions played to the jury in open court is a violation of the Act, it would be at most a technical violation[6] that does not constitute reversal error. See United States v. Mendoza, 574 F.2d 1373, 1379 (5th Cir. 1978); United States v. McCusker, 936 F.2d 781, 785–86 (5th Cir. 1981); see also United States v. Andiarena, 823 F.2d 673, 676 (1st Cir. 1997). This is because both the reviewing

---

[6]At least one of our sister circuits has expressed doubt whether such a practice even results in a violation of the Court Reporter Act. See United States v. Morales-Madera, 352 F.3d 1, 6–7 (1st Cir. 2003).

11

court and the criminal defendant can review "for errors and defects those tapes played to the jury but not transcribed into the written record." McCusker, 936 F.2d at 785; see also United States v. Cashwell, 950 F.2d 699, 703 (11th Cir. 1992). Moreover, the videotapes themselves, not the court reporter's transcriptions of them, are the most accurate record of what the jury heard. See United States v. Craig, 573 F.2d 455, 480 (7th Cir. 1977). For these reasons, Almagro's argument lacks merit and the trial record is complete.[7]

## B.

At the government's request, the district court permitted the videotaped depositions to be sent to the jury room for viewing during deliberations, along with a computer on which the jury could play them selectively and at will. On appeal, Almagro argues for the first time that this was error. Because Almagro did not object to this alleged error at trial, we review it for plain error. See United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005).

Under plain error review, we may, in our discretion, "correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2)

---

[7]We also find lacking Almagro's argument that his new counsel on appeal cannot effectively contest Almagro's convictions given that the videotaped depositions were not transcribed when played at trial. The supplemented record on appeal contains the DVDs of the videotaped depositions introduced at trial. Although the exhibits were not a part of the record originally filed here, Almagro's counsel, prior to briefing his appeal, could have obtained them from the government's counsel who kept them after trial pursuant to a court-ordered stipulation. Because the record is complete on appeal, no deficiencies exist in the record to warrant a new trial.

12

the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Marcus, 560 U.S. __, __ S. Ct. __, available at 2010 WL 2025203 (May 24, 2010) (quoting Puckett v. United States, 556 U.S. __, __, 129 S. Ct. 1423, 1429 (2009). Here, even if submission of the video depositions to the jury were error, we do not believe that error "affected the outcome of the district court proceedings" in light of Almagro's wholly incredible story. We therefore do not believe that Almagro was fundamentally denied a fair trial and affirm his conviction on all counts.

**AFFIRMED**.